Case 86—ACTION BY GEORGE WILLIS,' ADMINISTRATOR AGAINST THE ILLINOIS CENTRAL RY. CO. FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFFS INTESTATE, OCT., 30.

## Illinois Central Ry. Co. v. Willis, Admr.

Apeal from Meade Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for Plaintiff. Defendant appeals. Reversed.

1. Railroads—Injury to Person on Track—Actions—Venue.—Civ. Code Prac. sec. 73 provides that an action for an injury to a passenger or his property must be brought in the county in which the defendant or either of the several defendants resides, or in which plaintiff or his property is injured, or in which he resides, if he resides in a county into which the carrier passes. Held, that where intestate was killed while passing over a railroad track, the venue of an action by his administrator was governed by the residence of intestate, and not by the residence of the administrator.

2. Same—Signals—Injury to Person on Track.—Where intestate had full knowledge that the train by which he was struck was approaching before he went onto the track in front of it, it was immaterial whether the statutory provision requiring the whistle to be blown and the bell rung was complied with.

3. Same—Rate of Speed.—Where intestate heard the train approaching, by which he was struck, and by the exercise of ordinary care could have avoided it, it was immaterial that the train was running at an excessive rate of speed.

4. Same—Contributory Negligence.—Intestate either saw or heard the train by which he was struck approaching, and

thought he could cross ahead of it, in order to protect his child and guard his horse, which was on the other side of the track; but, miscalculating the speed of the train, he was struck and killed. Held, that intestate was guilty of contributory negligence, as a matter of law, which precluded a recovery by his administrator, unless those in charge of the train, after discovering intestate, could have stopped the same in time to have prevented the accident.

5. Same—Relation of Parties—Licensee—Care Required.—Where intestate crossed defendant's railroad tracks in a depot yard for the purpose of conversing with persons who were loading freight cars, and later attempted to recross in front of an approaching train at a point not a public crossing, he was ·at most a mere licensee, as to whom the railroad company owed no duty higher than the exercise of ordinary care.

J. S. WORTHAM, for appellant.

J. M. DICKINSON, TRABUE, DOOLAN & COX, and J. W. LEWIS, of counsel.

1.   The first error to which we call the attention of the court, is the refusal of the lower court to strike from appellee's petition all that part thereof in relation to the violation of the ten-minutes' rule as to the running of trains in the same direction. The refusal of the court to strike this allegation from the petition constituted its reason for the admission of testimony to prove that the rule has been violated. If this rule had been violated on this occasion, its violation was neither the proximate cause nor a remote cause of the accident. A failure to observe this rule could only create a liability when the failure caused an injury. The purpose of the rule was to prevent collisions on the track between trains going in the same direction; the observance of this rule is for the protection of the trains and the passengers and property thereon, but it cannot be said that the rule was for the protection of persons and property not on the train.

2.   We insist that the motion for a peremptory instruction to find for appellants should have been sustained. The court below seemed possessed with the idea that the negligent conduct of Willis should not be taken into the consideration of the case, if he sustained a business relation to the appellant company at the time; and believing that he sustained such a relation the court overruled the motion. There was not a scintilla of evidence that he sustained such a relation. In fact, the uncontradicted proof was that he had concluded his business with the agent and had left the depot. Besides, his business with the agent at no time required his presence on the track of the company's

Illinois Central Ry. Co. v. Willis' Admr.

railroad. Therefore, whether he is regarded as a trespasser, a licensee on the premises, or a person having business with the agent, his reckless conduct in running upon the track in front of the engine, within plain view of it and near at hand, is such negligence as bars a recovery. At the time he was struck he was not on any public highway.

## AUTHORITIES CITED.

1. Incompetent Testimony.—Ill. Cent. R. R. Co. v. Procter, 28 Ky. Law Rep., S. W. Rep; L. & N. R. R. Co. v. Watkins Admr., 1 R., 266; Brown's Admr. v. L. & N. R. R. Co., 17 R. 148; Shacelford's Admr. v. L. & N. R. R. Co., 84 Ky., 43; L. & N. R. R. Co. v. Howard's Admr., 6R., 166; L. & N. R. R. Co. v. Howard's Admr., 19 Am. & Eng. R. R. Cases, 102 (Notes); Dolfinger & Co. v. Fishback, 12 Bush, 482; Cooley on Torts, 657-8.

2. Peremptory Instruction—Helm v. L. & N. R. R. Co., 17 R., 1004; Craddock v. L. & N. R. R. Co., 13 R. 18; Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky., 43; Johnson's Admr. v. L. & N. R. R. Co., 91 Ky., 651; Shearman & Redfield on Negligence, p. 25; L. & N. R. R. Co., v. Cooper's Admr., 7 R., 102; Gresham's Admr. v. L. & N. R. R. Co., 15 R., 599; L. & N. R. R. Co. v. Taafe's Admr., 21 R., 64; Ohio Valley R. R. Co. v. Young, 19 R., 158; Meachem v. L. & N. R. R. Co., 20 R. 112.

S. M. PAYTON, for appellee.

## PROPOSITIONS AND AUTHORITIES.

1. Increased vigilance and precaution to prevent injury are required of those in charge of trains moving in or through a city or town. (L. & N. v. Howard, 82 Ky., 212; Shelby v. C. N. O. & T. P., 85 Ky., 224; Illinois Central v. Dick 91 Ky., 434 Ky. and Ind. Bridge v. Cecil 14 R. 447.)

2. Where the view is obstructed greater care is required, (79 Ky., 442 L. C. L. v. Goertz.)

3. The company is bound to keep its platforms, approaches and premises in a safe condition for those coming upon them for the transaction of business and it can not escape liability on the idea that the injured knew of the unsafety and danger. (White v. C. N. O. & T. P., 89 Ky., 478.)

4. One coming upon the premises seeking employment at the hands of shippers is not a trespasser but on business indirectly connected with the business of the company and entitled to active vigilance for his protection. (Shelby v. C. N. O. & T. P., 85 Ky. 224.)

5.  Such excessive speed as to put the engine out of the control of the crew and inhibit a lookout is actionable negligence. (C. & O. v. Keelin's Admr. 22 R. 1942-4.)

When one invites another to come upon his premises for business or pleasure it is his duty to be sure that he is not bringing them into a place of danger.  (Patterson on Railway accident law, p. 143-4, Southern Railway v. Goddard, 28 R. No. 8, p. 523.)

OPINION BY JUDGE LASSING—Reversing.

This is an appeal from the Meade circuit court rendered upon the verdict of a jury in favor of appellee against appellant for causing the death of appellee's intestate, George Willis, at Muldraugh's station, in Meade county, in September, 1904.  Deceased was 54 years of age when killed.  He had gone to the railroad station for the lady for whom he worked to deliver some boxes of peaches for shipment.  He was accompained by his 10 year old son.  The station stands upon the west side of the main track, then comes the passing track east of the main track, and then a spur track east of the passing track.  On the day upon which deceased was killed there were two box cars standing upon the spur track for the purpose of being loaded with barrels of apples which were then being shipped from that station.  The north end of one of these cars extended north of the north end of the depot, and the south end of the other car reached down to about even with the south end of the depot.  South of these two freight cars was a freight car standing on the passing track.  It was about noon when deceased reached the station with his peaches.  He drove up to the depot and had unloaded a part of them, when a train approached, and evidently fearing that his horse would scare, he drove back from the depot until the train had passed; he then returned to the depot, finished unloading the peaches, received the bill of lading of the agent in charge, left his little son sitting in the wagon, and

crossed over the main track and the passing track to where the two freight cars were standing on the spur track and in which the apples were being received for shipment. He climbed up into the car where two men were at work, and asked what they were paying for apples. His little son testified that his father went to that car for the purpose of securing empty barrels from those in charge of the car who worked there, and it may be that deceased had gone there for that purpose. There were two men receiving apples in said car, one named Ellwanger and one named Schoening. They testified that he had no sooner climbed into the car and asked the price of apples, than he heard the approach of a train or engine. He immediately jumped out of the car on the east side of it, ran south around the car on the spur track and around the south end of the car on the passing track out on the main track, where he was struck and killed, being knocked or carried some distance by the engine. Some 10 or 12 witnesses testified that this engine was following some five, six or less than ten, minutes behind the fast train which had just passed. Most of them say that the engine whistled for the crossing north of the station, and all of them agree that they heard the engine coming, even before they saw it, as it was making an unusual amount of noise, and some of them thought it was a "wrecking engine." Ellwanger and Schoening both say that deceased heard the approaching engine, and his conduct shows beyond question that he heard it, whether it signaled or not, for he jumped out of the car, ran around it and the other car, evidently for the purpose of going over on the road beyond the railroad to look after the safety of his little son who he had left sitting in the wagon with the horse untied. Proof was introduced showing that the engine was running rapidly, the testimony varying from 25 to 60 miles an hour. Those in charge

of the train testified that deceased came upon the track suddenly from behind the box car standing on the passing track; that when they first discovered him upon the track it was impossible to have avoided striking him.  Other witnesses testified that from the position in which the engine was upon the track—moving at the rate of speed it was when deceased came upon the track—they did not believe the accident could have been avoided.  Muldraugh is not an incorporated town, and the record does not show its size, or the number of people living there.  The proof shows that the road makes a curve north of the station, and standing in the track at the station one can see an engine 400 feet away; that the public road or crossing is 200 feet north of the station.  This was all the proof.

The petition shows that the administrator of the deceased was a resident of Bullitt county, and the deceased was a resident of Meade county, at the time the accident occurred in Meade county as stated. Appellant filed a special demurrer to the jurisdiction of the court, and it was overruled, and an exception saved.  At the conclusion of plaintiff's testimony defendant moved for a peremptory instruction, which was overruled.  This motion was renewed at the close of all the testimony, and again overruled, to which defendant excepted.  Five questions are raised on this appeal:  (1) The court erred in refusing to sustain the special demurrer to the jurisdiction.  (2) The court erred in admitting incompetent evidence. (3) The court erred in refusing to give peremptory instruction.  (4) The verdict is not sustained by the evidence, and is contrary to law.  (5) The jury was not properly instructed.

Appellant complains of the ruling of the trial court in overruling its special demurrer, which was a plea to the jurisdiction of the court.  Section 73 of the

Civil Code of Practice provides that "an action for an injury to. a passenger or his property must be brought in the county in which the defendant or either or several defendants resides; or in which plaintiff or his property is injured, or in which he resides; if he resides in a county into which the carrier passes." Appellant contends that as the administrator, Kelly, does not live in Meade county, and as neither of the defendants live in Meade county, that although the intestate lived in and was killed in Meade county, the action cannot be maintained therein, but must be brought in a county in which one of the defendants lives, or else in Bullitt county, the residence of the administrator, and relies upon sectaion 73 of the Civil Code of Practice to support its contention. We cannot agree to this contention. The word "plaintiff" as used in this section means Willis, the man killed, who speaks through his representative, his administrator. And this is the construction which the lawmakers evidently intended should be placed upon it, and the court properly overruled defendant's demurrer to the jurisdiction.

Upon the question as to whether or not the trial court should have given a peremptory instruction, it will be necessary to notice carefully the proof, and determine from the facts proven whether the deceased was killed through his own negligence and carelessness, or was he exercising ordinary care for his own safety when killed? That he heard the approach of the engine which killed him there cannot be the slightest doubt when we consider the testimony of the witnesses Ellwanger and Shoening and the action and conduct of the deceased immediately after they say he heard a train. His every movement shows that he heard it; that he knew and realized it was rapidly approaching, that he evidently remembered or recalled the fact that he had left his little

son in the wagon with the horse untied, over in the road behind the depot. And his efforts were directed towards reaching his son, and looking after his safety. It is immaterial, then, for the purposes of this suit whether the whistle was sounded or the bell rung, for this statutory provision is required to notify the public who may be on the highway at railroad crossings or other dangerous places of the approach of the train. In the case af Helm v. L. & N. R. R. Co., 17 Ky. Law Rep. 1004, the court held, as stated in the syllabus, as follows: "The appellant having seen the approaching train, he is not entitled to recover damages from the railroad company for an injury sustained by the train striking him while he was attempting to cross the track in front of the moving train. Though it was the duty of the engineer to sound his whistle some distance from the station, still his failure to do so did not entitle the appellant to recover damages for the injury sustained, since he negligently attempted to cross the track in front of the train after discovering its approach." And further discussing the question in this case, the court said: "It seems to us that if there was a failure to sound the whistle, such failure would not entitle the appellant to recover. The object in requiring the whistle to be sounded and bells to be rung is to give notice of the approach of the train. The appellant discovered the train was coming, and he negligently attempted to cross the track in front of it. It cannot be said that a failure to sound the whistle was the proximate cause of the injury." Nor can appellee complain of the rate of speed at which the train or engine was going at the time that his intestate was killed, for, as said by Judge Holt in the case of Craddock v. L. & N. R. R. Co., 16 S. W. 125, 13 Ky. Law. Rep. 18, "conceding the rate of speed, considering the place, was unreasonable, yet this did not authorize

the appellant to negligently throw himself in the way of it, when he had ample warning of its approach, and then claim damages for any resulting injury." In this case deceased heard the train, and by the exercise of any degree of care could have seen it as the proof shows there was nothing in his way to obstruct his view when he reached a point between the passing track and the main track. In the case of the L. & N. R. R. Co. v. Taffe's Adm'r, 50 S. W. 850, 21 Ky. Law Rep. 64, the court held: "that it was the duty of the decedent, if he had notice of the approach of the train to the station, to exercise reasonable care to ascertain the proximity of the train to the station, and to be careful not to expose himself to any danger by walking upon or near the track upon which the train was approaching, and it was his duty, if he heard the train whistle, indicating its approach to the station, to be on the lookout for same, and to keep himself out of danger." In the case of Gresham's Adm'r v. L. & N. R. R. Co., 24 S. W. 869, 15 Ky. Law Rep. 599, the court said: "It is evident that the boy saw the train before he crossed the track, and that he believed he could cross in safety before it could reach him, and he doubtless could have succeeded in the attempt but for the fact that he got his foot hung and fell. It is now contended that if the train had stopped, as required by the statute, before it got to the crossing, Gresham could have had time to recover from his fall, and have crossed in safety, and that because it failed to stop, as required, the killing was the result of wilful negligence.   *   *   * Here, as said, Gresham evidently saw the train coming at a rapid rate of speed, and close at hand, and believing that he could make the crossing in safety, made the venture, and he would doubtless have succeeded but for the fact that he fell, which caused him to be overtaken and killed. In this there is no negli-

gence of the appellee in reference to him.   The neg-
ligence that caused the death was his.''

In the case before us, deceased evidently saw the
engine approaching.   He thought he could cross the
track before it reached him.   He made the venture,
miscalculated the speed at which the train was ap-
proaching, and was killed.   The fault was his, unless
those in charge of the train after they discovered him
could have stopped the train in time to have prevent-
ed the accident.   In the Case of Johnson's Adm'r v.
L. & N. R. R. Co., 91 Ky. 651, 25 S. W. 754, the court
said:  ''When an adult person steps upon a railroad
track in front of and in full view of an approaching
train, those in charge have the right to presume that
his own consciousness of danger will cause him to
leave it before the train reaches him; and, in case the
person is deaf, or otherwise deficient in his faculties,
so as to render him unconscious of the impending
danger, the knowledge of such infirmity must be
brought home to those in charge of the train before
they or the railroad company can be made liable.''
Following the rule laid down in this case, if those in
charge of the train which killed him had seen him up-
on the track as they approached the depot, they
would have had the right to have expected him to
get off of the track in time to have prevented the ac-
cident.   The proof, however, shows that they did not
see him upon the track, and, in fact, he did not come
upon the track until the train was almost upon him,
when it was impossible to have done anything to have
prevented the accident.   The place at which deceas-
ed was killed was not a public crossing, and he had
no contractual relations with the company as shown
by the proof.   Considering the business for which he
crossed the track to the spur track in the light most
favorable to him, he was at most a licensee and the
company owed him no duty higher that the exercise

of ordinary care to have prevented the accident. We are of opinion that the facts in this case authorized and warranted a peremptory instruction to the jury to find for the defendants.

The judgment is reversed with instructions to grant a new trial in conformity with this opinion.

Petition for rehearing by appellee overruled.